**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SHANE SHUMA, | * | |
| Appellant, | * | |
| v. | * | Civil Action No. 8:25-cv-02186-PX |
| ERIN WHIBLEY, | * | |
| Appellee. | * | |

***

**MEMORANDUM OPINION**

This bankruptcy appeal challenges the United States Bankruptcy Court's determination that a debt arising from a state defamation case is dischargeable pursuant to 11 U.S.C. § 523(a)(6). ECF Nos. 1 & 3. The appeal is fully briefed, and no hearing is necessary. Loc. R. 105.6. For the following reasons, the order of the Bankruptcy Court is AFFIRMED.

## I. Background

Appellant Shane Shuma ("Shuma") and Appellee-Debtor Erin Whibley ("Whibley") were students at Dickinson College during the 2020–21 school year. ECF Nos. 11 at 5–6 & 12 at 14. Shuma made an ill-advised YouTube video satirically opining on the "reasons why the Holocaust was a good thing." ECF Nos. 11 at 5 & 12 at 14–15. The video spread through campus, and an uproar followed. ECF Nos. 11 at 6 & 12 at 15. School administrators publicly condemned it, the matter was widely reported in the student newspaper, and students spoke out against Shuma. ECF Nos. 3 at 5 & 12 at 15–16.

In one of Whibley's classes, a lively discussion ensued about Shuma. ECF Nos. 11 at 9 & 12 at 24. One student disclosed that she overheard Shuma at a club event saying things that were "absolutely unacceptable to, to say to anyone" and that "there were some threats involved," and she expressed her frustration that his behavior continued "after reporting on Shuma and knowing

people who have reported on him in terms of Title IX behavior or just Title IX in general." ECF Nos. 11 at 9 & 12 at 24. Another student echoed that she had heard from multiple people that Shuma had written articles in the student newspaper that expressed "racist sentiment." ECF No. 12 at 17–18. A third student described that Shuma had written an article arguing that "white privilege is not real . . . is not a thing." ECF No. 12 at 18.

After this conversation, Whibley initiated an online petition to advocate for Shuma's expulsion. ECF No. 2-5. The petition described Shuma as the subject of "multiple Title IX issues," and that he had written "racially charged [newspaper] articles." *Id.* She also described Shuma as a "serial offender." *Id.* The petition garnered 811 signatures in the first few days, and ultimately over half the Dickenson student body signed it. ECF Nos. 4 at 114 & 11 at 6.

Shortly after the posting, Whibley learned that Shuma had no such Title IX complaints filed against him. ECF Nos. 11 at 6 & 12 at 19. Within days, Whibley corrected the online petition to eliminate to the claim about Title IX. ECF Nos. 2-6, 11 at 6–7, & 12 at 20. She further explained in the modified petition that "Shuma has not been in violation of any Title IX statutes," and that she did "not wish to slander [Shuma]," but simply share what she heard from other students. ECF Nos. 2-6, 11 at 6–7, & 12 at 20.

Shuma sued Whibley for defamation in Pennsylvania state court. ECF No. 11 at 7. After settlement negotiations broke down, Whibley declined to defend the case, and default judgment was entered against her. ECF No. 11 at 7. The state court next concluded that Shuma was entitled to no damages, but upon Shuma's urging, scheduled a damages trial for October 31, 2023. ECF No. 3 at 9.

Days before the trial was set to begin, however, Whibley filed for bankruptcy in the District of Maryland, which triggered an automatic stay of the Pennsylvania case. ECF No. 11 at 7. Shuma

next initiated an adversarial proceeding in the bankruptcy case in which he averred that any debt Whibley incurs as part of the Pennsylvania defamation action was not dischargeable in bankruptcy because her conduct had been willful and malicious. ECF No. 3 at 10 (relying on 11 U.S.C. § 523(a)(6)).

The adversarial proceeding advanced to trial solely on whether Whibley defamed Shuma with the intent to injure him, thus rendering the debt nondischargeable. *See* ECF No. 4. By oral decision, the Bankruptcy Court found that any eventual damages award was dischargeable. ECF No. 3. In so holding, the Bankruptcy Court first determined that Shuma, as the party challenging dischargeability, bore the burden of proving by preponderant evidence that Whibley "acted in knowing disregard of the falsity of her defamatory statement." ECF No. 3 at 13. The Court next concluded that Whibley had not made the defamatory statement with the requisite intent to injure Shuma. *Id.* The Bankruptcy Court reasoned that Whibley relied on her classmates' reports and believed the information about Shuma to be true at the time of publication. *Id.* Further, given Whibley's own experiences with sexual assault, the court found credible her explanation as to why she believed the statements to be true. *Id.* at 6; *see* ECF No. 12 at 17. Last, because Whibley promptly corrected the petition once she learned that Shuma had committed no Title IX violations, Whibley's good faith attempt to recant reflected a lack of intent to harm. ECF No. 3 at 13.

This appeal followed. ECF No. 1.

## II. Standard of Review

This Court reviews the Bankruptcy Court's legal conclusions de novo and findings of fact for clear error. *In re Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 231 (4th Cir. 2006). A finding of fact is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). On review, this Court may affirm, modify, or reverse the Bankruptcy Court's order, or remand with instructions for further proceedings. *See Tidewater Fin. Co. v. Williams*, 341 B.R. 530, 533 (D. Md. 2006).

**III. Analysis**

Section 523(a) of the Bankruptcy Act enumerates certain exceptions to the dischargeability of debts in bankruptcy. Relevant here, subsection 523(a)(6) states that any debt arising from "willful and malicious injury by the debtor to another entity" is not dischargeable. *Id.* Importantly, a debt stemming from "a deliberate or intentional *injury*" is not dischargeable; but a debt can be discharged when arising from "a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original); *accord In re Muhs*, 923 F.3d 377, 385 (4th Cir. 2019) ("[A] bankruptcy court must specifically find a deliberate and intentional *injury*." (emphasis in original)).

Although Shuma claims to raise eight separate arguments on appeal, ECF No. 11 at 4, they boil down to two simple attacks. He contests, albeit thinly, that the Bankruptcy Court erred in placing the burden of proof on him. *Id.* at 14. He also insists that the Bankruptcy Court erred in concluding that Whibley harbored insufficient intent to injure him. *Id.* at 14–19. The Court considers each in turn.

As to the burden of proof, Shuma's argument is a nonstarter. "[T]he party challenging the dischargeability of a debt . . . bears the burden of proving the debt nondischargeable by a preponderance of the evidence." *Muhs*, 923 F.3d at 384; *accord Grogan v. Garner*, 498 U.S. 279, 287 (1991). Shuma gives the Court no reason to deviate from this bedrock principle. Thus, the decision to place this burden at his feet is affirmed.

Next, the Court discerns no error, let alone clear error, in the Bankruptcy Court's factual

finding that Whibley did not possess the requisite intent to injure Shuma. The Bankruptcy Court credited Whibley's testimony explaining why she relied on her classmates' reports about Shuma, and next when she learned of their inaccuracy, corrected the public record. ECF Nos. 2-5, 3 at 13, & 12 at 24. The Bankruptcy Court likewise was permitted to credit Whibley's explanation that her prior experiences with sexual assault made her more disposed to believing the reports of Shuma's misconduct, even though such belief ultimately was misplaced. ECF Nos. 3 at 6 & 12 at 11. Last, the Court discerns no error in the Bankruptcy Court's conclusion that Whibley's timely correction of the petition further corroborates a lack of intent to *injure* Shuma by defaming him. ECF No. 3 at 13; *see* ECF No. 2-6. Shuma may feel that Whibley's corrective statement did not go far enough, ECF No. 11 at 19, but mere disagreement with the Bankruptcy Court does not render clearly erroneous the Bankruptcy Court's factual findings regarding Whibley's lack of intent.

Nor can the Court conclude that the Bankruptcy Court erred in not considering Whibley's litigation-related filings as evidence of intentionality. ECF No. 11 at 14–16. In support, Shuma cites *In re Kennedy*, 249 F.3d 576 (6th Cir. 2001), and from it, contends that persistence in asserting defamatory statements is evidence of intentionality. ECF No. 11 at 14. *Kennedy* held that a finding of *defamation per se* sufficiently reflected an intent to injure such that the damages award was not dischargeable in bankruptcy. 249 F.3d at 577, 583. In so holding, the Court noted in dicta that the debtors' own repetition of the defamatory statements to unidentified "third parties" buttressed the finding of intentionality. *Id.* at 582–83. But this alone does not compel a different outcome for Whibley.

Unlike *Kennedy,* the record does not support that Whibley repeated anything defamatory about Shuma after she posted the petition. Rather, Shuma relies on Whibley's pro se filings made after she could no longer afford representation, and in advance of a damages hearing. *See* ECF

No. 2-7. In those filings, however, Whibley emphasized to the state court that she believed the statements in the petition to be true at the time, and otherwise advocated for speedy and cost-effective resolution of that case. ECF No. 2-7. Certainly, it is not unreasonable for the Bankruptcy Court to conclude that these filings shed little or no light on whether Whibley intended to harm Shuma at the time she posted the petition.

In sum, the Court sees no error, let alone reversible error, in the Bankruptcy Court's determination. The weight of the evidence demonstrates that Whibley posted the petition not to harm Shuma but to protect the student body from Shuma's opprobrium. ECF No. 3 at 6–7, 14. Whibley plausibly pointed to legitimate reasons why she believed her statements to be true at the time and promptly corrected the petition when she learned she was wrong. Shuma otherwise adduced no meaningful evidence to suggest that Whibley possessed the requisite intent sufficient to meet his burden. All of which supports the Bankruptcy Court's conclusion that the debt remains dischargeable in bankruptcy. Thus, the judgment of the Bankruptcy Court is affirmed.

A separate Order follows.

10/27/2026
Date

/s/
Paula Xinis
United States District Judge